# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KATHLEEN LYLES AND GARY LYLES, | ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:09cv0479 OWW DLB |
| Plaintiff, | | ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION (Document 11) |
| v. | | |
| ZIMMER, INC., et al., | | |
| Defendants. | | |

On April 7, 2009, Plaintiffs Kathleen Lyles and Gary Lyles ("Plaintiffs") filed the instant Motion to Remand to State Court. The matter was heard on May 8, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Matthew Faulkner appeared on behalf of Plaintiffs. Michelle Fujimoto appeared telephonically on behalf of Defendants Zimmer, Inc. ("Zimmer") and Zimmer-Cook Associates, Inc. ("Zimmer-Cook").

## **BACKGROUND**

Plaintiffs filed this product liability action against Zimmer and Zimmer-Cook in the Kern County Superior Court on December 5, 2008. Plaintiffs allege negligence, *res ipsa loquitur*, breach of express and implied warranties, strict liability and loss of consortium for injuries suffered by Kathleen Lyles after she underwent a total hip replacement on December 5, 2006, using the Durom Hip Resurfacing System ("Durom Cup") manufactured by Zimmer.

Defendants Zimmer and Zimmer-Cook answered the complaint on March 11, 2009.

On March 12, 2009, Defendants removed the action to this Court based on complete diversity of properly joined parties. Defendants contend that Zimmer-Cook is a sham defendant whose citizenship should be disregarded.

Plaintiffs filed the instant motion for remand on April 7, 2009, arguing that Zimmer-Cook is a distributor of the Durom Cup and is properly named under California tort law.[1] Plaintiffs also request costs and attorneys' fees in the amount of $3,000.00 for defending against removal.

Defendants opposed the motion on April 24, 2009. Plaintiffs filed their reply on April 28, 2009. On May 1, 2009, Defendants filed objections to evidence offered by Plaintiffs in their reply.

**FACTUAL BACKGROUND**

According to the complaint, Zimmer is a Delaware corporation with its principal place of business in Indiana. Zimmer-Cook is a domestic corporation in California with its principal place of business in San Francisco. Plaintiffs reside in Kern County, California.

Plaintiff Kathleen Lyles underwent hip replacement surgery on December 5, 2006, during which Dr. James Grimes implanted the Durom Cup. Plaintiffs allege that Zimmer manufactured the Durom Cup and that Zimmer-Cook distributed, supplied and sold the Durom Cup. During the surgery, Roger Probasco, a sales representative of Zimmer-Cook, was present "to assure proper placement and implantation techniques of the [Durom Cup]." Complaint, p. 5.

Following the surgery, Plaintiff Kathleen Lyles had persistent pain in the groin, particularly noted when bending forward. On March 31, 2009, Dr. Grimes diagnosed Ms. Lyles with a failed total hip arthroplasty, which required a revision right total hip arthroplasty. On April 1, 2008, Ms. Lyles underwent a revision of right total hip arthroplasty. Plaintiffs allege that as a direct and proximate result of Defendants Zimmer and Zimmer-Cook placing the defective product into the stream of commerce, Plaintiff Kathleen Lyles suffered and continues to suffer injuries and damages.

Plaintiffs allege causes of action against Defendants for (1) negligence (failure to warn);

---

[1] A related motion to remand is pending in Hinds v. Zimmer, Inc., 1:09cv0442 AWI DLB.

(2) *res ipsa loquitur*; (3) breach of express warranty; (4) breach of implied warranty; (5) strict products liability; and (6) loss of consortium by Plaintiff Gary Lyles.

**DISCUSSION**

Defendants argue that Plaintiffs fraudulently joined Zimmer-Cook to destroy diversity and that Zimmer-Cook is simply a service provider that facilitated the delivery of the Durom Cup to Dr. Grimes.  Plaintiffs counter that Zimmer-Cook is a distributor of the Durom Cup and distributors are proper defendants in products liability cases.

A.   Removal Jurisdiction

By statute "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  The party seeking to invoke federal jurisdiction bears the burden of establishing jurisdiction.  See Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).

B.   Fraudulent Joinder

"The joinder of a nondiverse defendant is fraudulent or a 'sham' and does not defeat jurisdiction if the plaintiff fails to state a cause of action against the defendant, and the failure is obvious according to the settled rules of the state." Soo v. United Parcel Serv., Inc., 73 F.Supp.2d 1126, 1128 (N.D.Cal. 1999) (citing McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) ("fraudulent joinder is a term of art")); see Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998) (noting that a defendant must show that "the individuals joined in the action cannot be liable on any theory" or that the resident defendant had "no real connection with the controversy"), cert. denied, 525 U.S. 963 (1998).

A party is deemed to have been joined fraudulently if, "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." Kalawe v. KFC Nat'l Management Co., 1991 WL 338566, *2 (D.Haw. 1991) (citing Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1426 (9th Cir. 1989), cert. denied, 496 U.S. 937 (1990)).  If a

defendant claims that other defendants were fraudulently joined, then the court may go beyond the pleadings to examine facts showing the joinder is fraudulent. See Ritchey, 139 F.3d at 1318. "If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand." Macey v. Allstate Property and Cas. Ins. Co., 220 F.Supp.2d 1116, 1117 (N.D.Cal. 2002).

C. <u>Analysis</u>

  Defendants assert that there is no reasonable basis for imposing liability against Zimmer-Cook under California law. Defendants contend that Zimmer-Cook is fraudulently joined in this action to defeat diversity. Defendants argue that a service provider, such as Zimmer-Cook, cannot be held liable under California law and that the learned intermediary doctrine precludes Plaintiffs from stating a claim against Defendant Zimmer-Cook.

  Plaintiffs, citizens of California, move for remand to state court based on a lack of diversity jurisdiction because Defendant Zimmer-Cook is a legitimate defendant with its place of business in California. Plaintiffs contend that Zimmer-Cook is a distributor of Zimmer products and it is well settled under California law that distributors are proper defendants in products liability cases. See, e.g., Bostick v. Flex Equip. Co., Inc., 147 Cal.App.4th 80, 88-89, 54 Cal.Rptr.3d 28, 34-35 (2007) (doctrine of strict products liability imposes strict liability in tort on all of the participants in the chain of distribution of a defective product; noting extension of strict liability for a defective product to retailers); Arena v. Owens-Corning Fiberglas Corp., 63 Cal.App.4th 1178, 1193, 74 Cal.Rptr.2d 580, 590 (1998) (concluding that defendants who are within the same chain of distribution of a single product remain jointly and severally liable to the plaintiff for the harm caused by that product).

  To support their argument, Plaintiffs rely, in part, on Becraft v. Ethicon, 2000 WL 1721056 (N.D.Cal. Nov. 2, 2000), which involved allegations of injuries from contaminated sutures. Defendant Ethicon removed the cases to federal court asserting diversity of citizenship and arguing that its California distributors were fraudulently joined. The plaintiffs moved to remand their complaints to state court. The court found that the plaintiffs had alleged receiving sutures delivered by one of Ethicon's California distributors and, based on the pleadings alone,

the plaintiffs had stated a claim against the distributors.  Id. at *2.  The court noted that defendant Ethicon did not deny that under California product liability law, a plaintiff can recover from the distributor of a defective product, and not just the product's manufacturer.  Id.

Here, Plaintiffs allege in their complaint that Zimmer-Cook "distributed and placed into the stream of commerce the [Durom Cup] through ...Roger Probasco."  Complaint, ¶¶ 3 and 8, 11, 14, 15 and 17.  In their fifth cause of action for strict product liability, Plaintiffs re-allege and incorporate by reference their prior allegations and further allege that at the time the Durom Cup was manufactured and sold it contained a defect in design and/or manufacture.  Complaint, ¶ 62.  Plaintiffs also allege that Roger Probasco, a Zimmer-Cook representative, accompanied Dr. Grimes during the surgical implantation of the Durom Cup into Plaintiff Kathleen Lyles.  Complaint, ¶ 65.  Consistent with Becraft, and based on the pleadings alone, Plaintiffs have stated a claim against Zimmer-Cook as a distributor.

Defendants disagree and attempt to distinguish Becraft as involving a defendant manufacturer that did not deny the possibility of distributor liability.  Defendants also contend that Becraft was not a nuanced decision relative to the defendant distributors.  In this case, Defendants explain that California recognizes three types of product defects that may give rise to strict liability: (1) a flaw in the manufacturing process, resulting in a product that differs from the manufacturer's intended result (manufacturing defect); (2) products that are "perfectly" made but are nevertheless unsafe because of some flaw in the product's design (design defect); and (3) a product that is dangerous because it lacks adequate warnings or instructions.  Brown v. Superior Court, 44 Cal.3d 1049, 1056 (1988).  Defendants argue that because Zimmer-Cook was not involved in the design or manufacture of the Durom Cup, Zimmer-Cook cannot be held strictly liable for any alleged design or manufacturing defects and, thus, Plaintiffs' strict liability claim against Zimmer-Cook can be based only on a failure to warn theory.

Defendants contend that strict liability for failure to warn "is conditioned on the actual or constructive knowledge of the risk by the manufacturer as of the time the product was sold or distributed."  Brown, 44 Cal.3d at 1065-66.  Applying Brown, Defendants assert that imposing strict liability for failure to warn against a mere service provider like Zimmer-Cook would violate

the rule that such liability may not be imposed against one who neither knew nor had reason to know of an alleged risk. Defendants claim that although Plaintiffs allege Zimmer-Cook is strictly liable because Mr. Probasco was present at Kathleen Lyle's surgery to "ensure that the Durom [Cup] was being used for the purpose for which it was intended," Zimmer-Cook and Mr. Probasco "merely facilitated the delivery of the Durom Cup" and played no role in developing the labeling, warnings or instructions that accompanied it and Probasco did not warn or instruct Dr. Grimes in any way. Complaint, ¶ 65; Cook Aff., ¶ 5, 8, 10; Probasco Aff., ¶ 9. Defendants further assert that the learned intermediary doctrine shields Zimmer-Cook from strict liability because the duty to warn of risks associated with medical devices runs from the manufacturer to the physician and service providers owe no duty to patients or their physicians. Brown, 44 Cal.3d at 1061-62 n.9; Skinner v. Warner-Lambert Co., 2003 WL 25598915, *1 (C.D.Cal. April 28, 2003) (finding distributor of FDA-approved medication to pharmacists not subject to strict liability).

Defendants further rely on Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.3d 672, 680-81 (1985), which declined to extend the doctrine of strict liability to a pharmacy dispensing a prescription drug. Defendants attempt to liken Zimmer-Cook to a pharmacist who dispenses a prescription drug and is furnishing a service, pointing to the Murphy court's finding that

> [a] key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor. In this respect, he is providing a service to the doctor and acting as an extension of the doctor in the same sense as a technician who takes an X-ray or analyzes a blood sample on a doctor's order.

Id. at 679.

In short, Defendants contend that Plaintiffs cannot maintain their claims against Zimmer-Cook because the principles that the California Supreme Court relied upon to explain liability for drug manufacturers in Brown and to create an exception in strict liability for pharmacists in prescription drug cases apply to prevent recovery against distributors in products liability cases involving implanted medical devices. However, neither party has cited a case under California law that creates an exception in strict liability for distributors in implanted medical device cases. See Maher v. Novartis, 2007 WL 2330713, *1, 5 (S.D.Cal. Aug. 13, 2007) (noting absence of

cited case under California law creating an exception in strict liability for distributors in prescription drug cases); Cf. Skinner, 2003 WL 25598915, at *1 (distributor of a prescription drug is not subject to strict liability).  As noted, under California law, both a manufacturer and a distributor can be strictly liable for injuries caused by a defective product.  Bostick, 147 Cal.App.4th at 88-89; Arena, 63 Cal.App.4th at 1193; see also Vandermark v. Ford Motor Co., 391 P.2d 168, 171 (Cal. 1964) (automotive dealer).  Brown has not foreclosed strict liability for manufacturing defects or distribution of a product with a manufacturing defect.[2]  See, e.g., Artiglio v. Superior Court, 22 Cal.App.4th 1388, 1393) (discussing Brown's prescription drug exception to general products strict liability for defective design, but noting that strict liability would continue to apply for manufacturing defect and failure to warn of known or reasonably knowable risks).  Further, the Murphy court's finding is limited to a pharmacist engaged in "a hybrid enterprise, combining the performance of services and the sale of prescription drugs," and not a distributor of implanted medical devices.  Murphy, 40 Cal.3d at 678.

Based on the above, there is no indication that Plaintiffs cannot state a claim against Zimmer-Cook.  Therefore, Plaintiff's Motion to Remand is GRANTED and this action is REMANDED to the Kern County Superior Court.

D.   Costs

Plaintiffs have moved to recover the costs incurred in defending against removal. Plaintiffs cite 28 U.S.C. § 1447(c), which provides that a district court may award costs and expenses, including attorney's fees, if the court remands a case to state court.  The award of attorney's fees under section 1447(c) is left to the district court's discretion and may be awarded only where the removing party lacked an objectively reasonable basis for seeking removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an

---

[2]This understanding is supported by the Restatement (Third) of Torts: Product Liability, discussing a section analogous to § 402A of the Restatement (Second) of Torts.  The Restatement (Third) provides that a retail seller or other distributor of a prescription drug or medical device is subject to liability for harm caused by the drug or device if, at the time of sale or other distribution, the drug or medical device contains a manufacturing defect. Rest. (3d) Torts: Prod. Liab. § 6.

objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied").

The California Supreme Court has not spoken on the issue of distributor liability in the present context. As such, Zimmer had a reasonable basis for arguing that Plaintiffs cannot impose liability against Zimmer-Cook under California law. Plaintiffs' request for costs is DENIED.

## ORDER

Based on the above, Plaintiffs' Motion to Remand is GRANTED. This action is REMANDED to the Kern County Superior Court for all further proceedings.

It is FURTHER ORDERED that Plaintiffs' request for costs is DENIED.

IT IS SO ORDERED.

Dated:   **May 29, 2009**             **/s/ Dennis L. Beck**
                                     UNITED STATES MAGISTRATE JUDGE